## UNITED STATES COURT OF INTERNATIONAL TRADE

```
-----------------------------------------------------------X
                                                           :
HILTI, INC.,                                               :
                                                           :
                         Plaintiff,                        :
                                                           :
                                                           :
             v.                                            :
THE UNITED STATES;                                         :
JOSEPH R. BIDEN, JR., in his official capacity as          :
PRESIDENT OF THE UNITED STATES;                            :       Court No. 21-216
UNITED STATES CUSTOMS AND BORDER                           :
PROTECTION; TROY MILLER in his official                    :
capacity as SENIOR OFFICIAL PERFORMING                     :
THE DUTIES OF THE COMMISSIONER OF U.S.                     :
CUSTOMS AND BORDER PROTECTION;                             :
UNITED STATES DEPARTMENT OF                                :
COMMERCE; and GINA RAIMONDO in her                         :
official capacity as SECRETARY OF COMMERCE:
                                                           :
                         Defendants.                       :
                                                           :
-----------------------------------------------------------X
```

## <u>COMPLAINT</u>

Hilti, Inc. ("Hilti"), by and through its attorneys, Barnes, Richardson & Colburn, LLP,

hereby alleges the following:

### STATEMENT OF THE CASE

1.      On January 24, 2020, then President Donald J. Trump issued Presidential

Proclamation 9980 imposing a 25 percent tariff on imports of so-called "derivative" steel

products,[1] purportedly pursuant to his power under Section 232 of the Trade Expansion Act of

---

[1]      Proclamation 9980 also imposed duties on derivative aluminum products. Hilti is not an importer of any derivative aluminum products and therefore is not able to contest the imposition of those duties in this litigation.

1962, as amended (19 U.S.C. §1862) ("Section 232").  *See* 85 *Fed. Reg.* 5281 (Jan. 29, 2020) ("Proclamation 9980") (attached as Exhibit 1).

2.     Hilti is an importer of steel nails, a product defined in Proclamation 9980 as a derivative steel product subject to the additional 25 percent tariff.  Thus, Hilti is adversely affected because it pays the additional duty on its imports of steel nails.  Furthermore, Hilti did not have an opportunity to provide input into the President's decision to impose these tariffs because Wilbur Ross, the Secretary of Commerce ("Secretary") at the time of the decision, had not undertaken the required investigation nor published any report of findings that imports of derivative steel products, including steel nails, posed a threat to national security of the United States.  The first public announcement that tariffs would be imposed pursuant to Section 232 occurred on January 24, 2020 -- the day Proclamation 9980 was issued.

3.     The President's authority to impose tariffs under Section 232 is limited.  Before the President may do so, the Secretary must investigate whether imports of the product at issue threaten to impair national security.  The Secretary must submit to the President within 270 days of the investigation's commencement a report of his findings and publish that report in the *Federal Register*. 19 U.S.C. §1862(b)(3).  If the report concludes that such imports pose a threat to national security, then a 90-day period is triggered during which the President must decide whether he agrees with the report and, if so, to announce the nature and duration of any remedial action. *Id*. §1862(c)(1)(A)(ii).  That remedial action must be implemented within fifteen days of the President's decision.  *Id*. §1862(c)(1)(B).

4.     Proclamation 9980 was issued with neither the President nor the Secretary of Commerce complying with the statutory requirements of Section 232. The Secretary had not investigated whether imports of derivative steel products threatened national security. He had not

submitted a written report to the President, nor published one in the *Federal Register*. Because no report was ever issued, the statute's deadlines for Presidential decision and implementation passed without the required actions.

5.        The President and the Secretary were aware of the procedural obligations required before remedial actions under Section 232 could be implemented, having used Section 232 previously. In 2017, the Secretary investigated the effects of imports of certain steel mill products. On January 11, 2018 he submitted to the President the required report on the effect of such imports on the national security. *See,* U.S. Department of Commerce, Bureau of Industry and Security, Office of Technology Evaluation, *The Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962, as Amended* (Jan. 11, 2018) ("*Steel Report*") (attached as Exhibit 2).

6.        Neither the Secretary's 2017 investigation nor the *Steel Report* addressed derivative articles of steel. Even if they had, Proclamation 9980 violated the deadlines imposed under Section 232, as Proclamation 9980 was issued 744 days after the President received the *Steel Report* and 640 days after he was required to implement any action based on it.

7.        The President exceeded the powers delegated to him by Congress under Section 232 when he issued Proclamation 9980 without following the procedural requirements of Section 232. In addition, because these statutory procedural requirements were not met, Hilti, as an importer of derivative steel products subject to Proclamation 9980, was denied the equal protection of the laws as guaranteed by the Fifth Amendment's Due Process clause.

8.        On April 5, 2021, the United States Court of International Trade decided *PrimeSource Building Products, Inc. v. United States, et. al.*, No. 20-00032, 2021 Ct. Intl. Trade LEXIS 36 (Ct. Int'l Trade Apr. 5, 2021), holding that Proclamation 9980 was issued by the

President after his congressionally delegated authority to adjust imports of the products identified

in the Proclamation had expired.  As such, the court invalidated as contrary to law Proclamation

9980, finding it to be an action taken outside of delegated authority.

## JURISDICTION

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1581(i)(2)

and (4), and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 704, 706.  Section

1581 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any

civil action commenced against the United States, its agencies, or its officers, that arises out of

any law of the United States providing for… tariffs, duties, fees, or other taxes on the

importation of merchandise for reasons other than the raising of revenue," 28 U.S.C. §1581(i)(2),

and "administration and enforcement with respect to the matters referred to in paragraphs (1)-(3)

of this subsection [(i)]." *Id.* §1581(i)(4).  The APA provides this Court with broad judicial review

of agency actions brought by "person[s] suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5

U.S.C. §§ 702.

## PARTIES

10.      Plaintiff Hilti is headquartered in Plano, Texas and is an importer and distributor

of products for the construction, building maintenance, energy, and manufacturing industries,

most of which are developed, manufactured, and marketed by its parent company, Hilti AG of

Schaan, Liechtenstein.  Hilti directly imports significant quantities of steel nails, which are used

with its gas or battery-powered nail guns for fastening building materials to concrete, steel, and

other surfaces.  Steel nails are identified as a derivative steel product in Proclamation 9980.  As

importer of record, Hilti pays the 25 percent tariff being assessed pursuant to Proclamation 9980 and Section 232 on its steel nail imports.

11.     Defendant United States is the recipient of the Section 232 tariffs that are the subject of this suit and is the statutory defendant under sections 1581(i)(2) and (4).

12.     Defendant Joseph R. Biden Jr. is the President of the United States.  At the time of the events complained of herein, Donald J. Trump was President of the United States, in which capacity he issued Proclamation 9980.  Defendant Biden is sued in his official capacity only.

13.     Defendant United States Customs and Border Protection ("CBP") is the agency that administers and enforces the tariffs imposed under Section 232, including the tariffs ordered pursuant to Proclamation 9980.

14.     Defendant Troy Miller is the Senior Official Performing the Duties of the Commissioner of CBP.  When Proclamation 9980 was issued, Mark A. Morgan was the Acting Commissioner of CBP, with responsibility for overseeing CBP's collection of tariffs paid by Hilti.  Defendant Miller is sued in his official capacity only.

15.     Defendant United States Department of Commerce ("Commerce") is the agency responsible by statute for initiating and conducting investigations under Section 232 and for providing findings and recommendations to the President of the United States. Proclamation 9980 purports to respond to certain undisclosed "assessments" and "recommendations" made by Commerce.

16.     Defendant Gina Raimondo is the Secretary of the United States Department of Commerce. When Proclamation 9980 was issued, Wilber Ross was the Secretary of Commerce

and was the individual responsible for conducting investigations and issuing reports under

Section 232.  Defendant Raimondo is sued in her official capacity only.

## STANDING

17.     Hilti has standing to bring this action pursuant to 28 U.S.C. §2631(i), which states

that "[a]ny civil action of which the Court of International Trade has jurisdiction, other than an

action specified in subsections (a)-(h), may be commenced in the court by any person adversely

affected or aggrieved by agency action within the meaning of [the APA at] section 702 of title

5."  Section 702, in turn, states that "[a] person suffering legal wrong because of agency action,

or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof." 5 U.S.C. §702.

18.     Hilti has standing to challenge the Defendants' unlawful acts in issuing

Proclamation 9980 and imposing tariffs of 25 percent on certain derivative articles of steel

pursuant to it.  Hilti is the importer of record in the United States, and it paid and is paying the 25

percent tariff on steel nails imposed by the challenged Proclamation.  In addition, Hilti suffered

actual and irreparable harm from the Proclamation because it was deprived of the right to

provide written comments and testimony regarding the imposition of the 25 percent duties on its

steel nail imports.  Therefore, Hilti is a "person . . . adversely affected or aggrieved" by the

issuance and implementation of Proclamation 9980, within the meaning of 5 U.S.C. §702, and

has suffered, and continues to suffer concrete and particularized injury resulting from the

issuance and implementation of Proclamation 9980.

## TIMELINESS OF THIS ACTION

19.     This action has been filed within two years of January 24, 2020, the date the
President issued Proclamation 9980.  This filing is timely, therefore, because it is filed within
two years after the earliest this cause of action could have accrued.  28 U.S.C. § 26336(i).

## STATEMENT OF FACTS

**I.       Section 232 of the Trade Expansion Act of 1962**

20.     Section 232, titled "Safeguarding National Security," authorizes the President,
upon a "finding" that "an article is being imported into the United States in such quantities or
under such circumstances as to threaten to impair the national security," to take action "to adjust
the imports of the article and its derivatives so that such imports will not threaten to impair the
national security." 19 U.S.C. §1862(c)(1)(A)(ii).  Section 232 dictates the administrative process
required before the President can make such an action.  *Id*. at §1862(b).

21.     A Section 232 action begins with a request from "the head of any department or
agency," including the Secretary of Commerce himself, to the Secretary of Commerce, who
"shall immediately initiate an appropriate investigation to determine the effects on the national
security of imports of the article which is the subject of such request."  *Id*. at §1862(b)(1)(A).
Commerce's Bureau of Industry and Security ("BIS") conducts Section 232 investigations in
accordance with the federal regulations codified at 15 C.F.R. part 705.

22.     The Secretary of Commerce pursuant to Section 232 conducts the investigation in
consultation with the Secretary of the Department of Defense ("Secretary of Defense") and other
U.S. officials, as appropriate, to determine the effects of the investigated imports on the national
security. Specifically, the Secretary of Commerce shall "immediately provide notice to the
Secretary of Defense of any investigation," shall "consult with the Secretary of Defense

regarding the methodological and policy questions raised in any investigation," and if appropriate, shall "hold public hearings or otherwise afford interested parties an opportunity to present information and advice." 19 U.S.C. §§1862(b)(1)(B); (b)(2)(A). The "Secretary of Defense shall provide the Secretary [of Commerce] an assessment of the defense requirements of any article" under investigation. *Id*. at §1862(b)(2)(B).

23.    Within 270 days after initiating an investigation, the Secretary of Commerce "shall submit to the President" and publish in the Federal Register "a report on the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security and, based on such findings, the recommendations of the Secretary for action or inaction under th[e] section." *Id.* at §1862(b)(3)(A). "If the Secretary finds that such article is being imported into the Unites States in such quantities or under such circumstances as to threaten to impair the national security, the Secretary shall so advise the President in such report." *Id*.

24.    "Any portion of the report submitted by the Secretary [of Commerce] under [§1862(b)(3)] (A) which does not contain classified information or proprietary information shall be published in the Federal Register." *Id*. at §1862(b)(3)(B).

25.    A report by the Secretary of Commerce that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security triggers a duty on the President to act. Within 90 days, the President must "determine whether the President concurs with the finding of the Secretary." *Id.* at §1862(c)(1)(A). Conversely, if the Secretary of Commerce's report does not contain a finding that an article is being imported into the United States in such quantities or under such circumstances as to

threaten to impair the national security, the President has neither a duty nor the authority to take any action under Section 232. *Id.*

26.     If the President concurs with the Secretary of Commerce that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, the President must "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." *Id*. §1862(c)(1)(A)(ii). After making this determination, the President has 15 days to implement the action. *Id*. at §1862(c)(1)(B).

27.     Finally, the President must "submit to the Congress a written statement of the reasons" explaining his determination "[b]y no later than the date that is 30 days after the date on which the President makes any determinations." *Id*. at §1862(c)(2).


**II.     Commerce's Investigation of Steel Articles under Section 232**

28.     On April 19, 2017, Secretary of Commerce Wilbur Ross initiated an investigation under Section 232 into the effects of certain steel imports on the national security of the United States. As part of the investigation, Commerce collected written public comments, held a public hearing, and consulted with the Secretary of Defense, *Notice Request for Public Comments and Public Hearing on Section 232 National Security Investigation of Imports of Steel*, 82 Fed. Reg. 19205 (April 26, 2017).

29.     Commerce's notice of its Section 232 investigation referenced only steel mill products and not derivative products such as steel nails. Based on the exclusive reference to

steel mill products, Hilti had no reason to believe that its steel nail imports would be subject to the investigation.

30.     On January 11, 2018, BIS issued the *Steel Report*. The *Steel Report* expressly stated that the scope of the investigation was limited to certain steel mill products ("steel articles") described and classified in subheadings 7206.10 through 7216.50, 7216.99 through 7302.10, 7302.40 through 7302.90, and 7304.10 through 7306.90 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *See, Steel Report* at 21 ("Product Scope of the Investigation"). The steel articles described in the *Steel Report* did not include steel nails, and steel nails are not classifiable under any of the HTSUS numbers identified in the *Steel Report*.

31.     The *Steel Report* observed that the United States' domestic steel industry was in decline, that shrinking "capacity utilization rates" were deterring capital investment and that imports had contributed to the fall off in domestic production. *Steel Report* at 3-5. "[T]he Secretary of Commerce conclude[d] that the present quantities and circumstance of steel imports are responsible for a 'weakening of our internal economy' and threaten to impair the national security as defined in Section 232." *Id*. at 5.  Commerce identified global excess steel capacity as a circumstance that contributes to the "weakening of our internal economy" that "threaten[s] to impair" the national security as defined in Section 232. *Id*. at 5, 16.  It explained that "U.S. steel production capacity has remained flat since 2001, while other steel producing nations have increased their production capacity, with China alone able to produce as much steel as the rest of the world combined." *Id*. at 52.  Commerce recommended that the President take immediate action to adjust the level of these imports through quotas or tariffs. *Id*. at 58-61.  Commerce recommended three alternative actions, each of which had the stated objective of enabling the

U.S steel industry to operate at an average capacity utilization rate of 80 percent or better. *Id*. at 6-9.

32.     In the *Steel Report*, Commerce explained that it analyzed the impact of imports of the subject steel articles using a broad definition of "national security," to include not only the term "national defense" but also to "include[ ] the general security and welfare of certain industries, beyond those necessary to satisfy national defense requirements, which are critical to minimum operations of the economy and government." *Steel Report* at 1, 13-15 (quotation omitted).

33.     On February 18, 2018, the Secretary of Defense sent a letter to Commerce providing its position on the recommendations contained in the *Steel Report*. The Secretary of Defense conveyed that in his view, "U.S. military requirements for steel and aluminum each only represent about three percent of U.S. production" and "[t]herefore, DoD does not believe that the findings in the reports [by Commerce] impact the ability of DoD programs to acquire the steel or aluminum necessary to meet national defense requirements." *See, Memorandum from Sec'y of Def. to Sec'y of Commerce re: Response to Steel and Aluminum Policy Recommendations* (Feb. 18, 2018) ("*Defense Memorandum*") at 1 (attached as Exhibit 3). The Secretary of Defense also shared that the Department of Defense "continues to be concerned about the negative impact on our key allies" of "the recommended options within the reports." *Id*.

34.     Neither the *Steel Report* nor the *Defense Memorandum* identified steel nails as an important element of the Department of Defense's national defense requirements.

**III.      The Proclamation on Articles of Steel**

35.      On March 8, 2018, President Donald J. Trump issued Proclamation 9705 pursuant to Section 232 and the *Steel Report*.

36.      Proclamation 9705 imposed 25 percent tariffs on U.S. imports of certain steel mill articles. *See, Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 11625 (Mar. 15, 2018) ("Proclamation 9705") (attached as Exhibit 4).

37.      Proclamation 9705 stated "that Canada and Mexico present a special case" given their "shared commitment [with the United States] to support . . . each other in addressing national security concerns." *Id*. at 11626. Accordingly, the President "determined that the necessary and appropriate means to address the threat to national security posed by imports of steel articles from Canada and Mexico is to continue ongoing discussions with these countries" and exempt them "from the tariff, at least at this time." *Id.*

38.      The new 25 percent steel tariffs were scheduled to take effect as to all countries other than Canada and Mexico on March 23, 2018.

39.      Proclamation 9705 imposed tariffs on the following articles:

- flat-rolled products provided for in headings 7208, 7209, 7210, 7211, 7212, 7225 or 7226;

- bars and rods provided for in headings 7213, 7214, 7215, 7227, or 7228; angles, shapes and sections of [heading] 7216 (except subheadings 7216.61.00, 7216.69.00 or 7216.91.00); wire provided for in headings 7217 or 7229; sheet piling provided for in subheading 7301.10.00; rails provided for in subheading 7302.10; fish-plates and sole plates provided for in subheading 7302.40.00; and other products of iron or steel provided for in subheading 7302.90.00;

- tubes, pipes and hollow profiles provided for in heading 7304, or 7306; tubes and pipes provided for in heading 7305;

- ingots, other primary forms and semi-finished products provided for in heading 7206, 7207 or 7224; and

- products of stainless steel provided for in heading 7218, 7219, 7220, 7221, 7222 or 7223.

*Id*. at 11629.

40. Proclamation 9705 made no reference to any derivative articles of steel, steel nails or to the specific derivative articles of steel later set out in Proclamation 9980.

41. Proclamation 9705 instructed that:

> The Secretary shall continue to monitor imports of steel articles and shall, from time to time, in consultation with the Secretary of State, the Secretary of the Treasury, the Secretary of Defense, the USTR, the Assistant to the President for National Security Affairs, the Assistant to the President for Economic Policy, the Director of the Office of Management and Budget, and such other senior Executive Branch officials as the Secretary deems appropriate, review the status of such imports with respect to the national security. The Secretary shall inform the President of any circumstances that in the Secretary's opinion might indicate the need for further action by the President under Section 232 of the Trade Expansion Act of 1962, as amended. The Secretary shall also inform the President of any circumstance that in the Secretary's opinion might indicate that the increase in duty rate provided for in this proclamation is no longer necessary.

*Id*. at 11628.

## IV. Subsequent Exemptions from Proclamation 9705

42. In Proclamation 9740 of April 30, 2018 (Adjusting Imports of Steel into the United States), the President imposed quotas on articles of steel from South Korea and exempted articles of steel from South Korea from the 25 percent tariff. *See,* 83 Fed. Reg. 20,683 (May 7, 2018).

43.     In Proclamation 9759 of May 31, 2018 (Adjusting Imports of Steel into the United States), the President imposed quotas on articles of steel from Argentina and Brazil and exempted articles of steel from Argentina and Brazil from the 25 percent tariff, and exempted articles of steel from Australia from the 25 percent tariff without imposing any quota on articles of steel from Australia. *See,* 83 Fed. Reg. 25,857 (June 5, 2018).

44.     On May 17, 2019, in conjunction with negotiation of the United States-Mexico-Canada Agreement ("USMCA"), the United States announced that it had agreed to exempt articles of steel from Canada and Mexico from the 25 percent tariff.

45.     The President did not impose any quotas on articles of aluminum or steel from Canada and Mexico. *See,* Joint Statement by the United States and Mexico on Section 232 Duties on Steel and Aluminum (attached Exhibit 5); Joint Statement by the United States and Canada on Section 232 Duties on Steel and Aluminum (attached as Exhibit 6).

46.     As a result, articles of steel from Argentina, Australia, Brazil, Canada, Mexico, and South Korea are currently exempt from the 25 percent tariff imposed by Proclamation 9705.

**V.   Proclamation 9980**

47.     On January 24, 2020, without any prior notice and nearly two years after issuing Proclamation 9705, the President issued Proclamation 9980, imposing, *inter alia*, a 25 percent tariff on U.S. imports of certain "derivative" products manufactured from steel, effective February 8, 2020. *See,* 85 Fed. Reg. 5281 (Jan 29, 2020).

48.     The President cited the *Steel Report* and his instructions in Proclamation 9705 that the Secretary of Commerce inform him of any further action needed under Section 232 as his legal authority to issue Proclamation 9980:

> 1. On January 11, 2018, the Secretary of Commerce (Secretary) transmitted to me a report on his investigation into the effect of imports of steel articles on the national security of the United States, and on January 19, 2018, the Secretary transmitted to me a report on his investigation into the effect of imports of aluminum articles on the national security of the United States. Both reports were issued pursuant to section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862).
> . . . .
>
> 4. In Proclamation 9704 and Proclamation 9705, I directed the Secretary to monitor imports of aluminum articles and steel articles, respectively, and inform me of any circumstances that in the Secretary's opinion might indicate the need for further action under section 232 of the trade Expansion Act of 1962, as amended.

*See,* 85 Fed. Reg. 5281.

49.     Proclamation 9980 states that further action under Section 232 is warranted because the Secretary of Commerce has "informed" the President that "domestic steel producers' capacity utilization has not stabilized for an extended period of time at or above . . . 80 percent." *Id*. at 5281.

50.     Proclamation 9980 also states that the Secretary of Commerce has "informed" the President that, "[a]lthough imports of aluminum articles and steel articles [included in Proclamations 9704 and 9705] have declined since the imposition of the tariffs and quotas [pursuant to those Proclamations], . . . imports of certain derivatives of aluminum articles and imports of certain derivatives of steel articles have significantly increased," and that the "net effect of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of aluminum and steel." *Id*.

51.     Proclamation 9980 further states that "[i]t is the Secretary's assessment that foreign producers of these derivative articles have increased shipments of such articles to the United States to circumvent the duties on aluminum articles and steel articles imposed in

Proclamation 9704 and Proclamation 9705, and that imports of these derivative articles threaten to undermine the actions taken to address the risk to the national security of the United States found in Proclamation 9704 and Proclamation 9705." *Id*.

52.     Proclamation 9980 imposed 25 percent tariffs on the following derivative articles of steel:

- nails, tacks (other than thumb tacks), drawing pins, corrugated nails, staples (other than those of heading 8305) and similar articles, of iron or steel, whether or not with heads of other material (excluding such articles with heads of copper), suitable for use in powder-actuated handtools, threaded (described in subheading 7317.00.30; and

- nails, tacks (other than thumb tacks), drawing pins, corrugated nails, staples (other than those of heading 8305) and similar articles, of iron or steel, whether or not with heads of other material (excluding such articles with heads of copper), of one piece construction, whether or not made of round wire; the foregoing described in statistical reporting numbers 7317.00.55.03, 7317.00.55.05, 7317.00.55.07, 7317.00.55.60, 7317.00.55.80 or 7317.00.65.60 only and not in other statistical reporting numbers of subheadings 7317.00.55 and 7317.00.55.65;

- bumper stampings of steel, the foregoing comprising parts and accessories of the motor vehicles of headings 8701 to 8705 (described in subheading 8708.10.30); and

- body stampings of steel, for tractors suitable for agricultural use (described in subheading 8708.29.21).

*Id*. at 5290-91.

53.     These tariffs do not apply to derivative articles of steel from countries previously exempted from the 25 percent tariff imposed by Proclamation 9705, *i.e*., Argentina, Australia, Brazil, Canada, Mexico, and South Korea.

54.     These articles were selected because they met the following criteria in Proclamation 9980:

(a)    the aluminum article or steel article represents, on average, two-thirds or more of the total cost of materials of the derivative article;"

(b)    Import volumes of such derivative article increased year-to-year since June 1, 2018, following the imposition of the tariffs in Proclamation 9704 and Proclamation 9705 . . . in comparison to import volumes of such derivative article during the 2 preceding years; and

(c)    Import volumes of such derivative article following the imposition of the tariffs exceeded the 4 percent average increase in the total volume of goods imported into the United States during the same period since June 1, 2018.

*Id*. at 5282.

## VI.  Proclamation 9980 was not Authorized Pursuant to Section 232

55.    The Secretary of Commerce has not made available to the public any information that he may have provided to the President pursuant to Section 232 that could have supported the President's issuance of Proclamation 9980.

56.    The Secretary of Commerce did not investigate under Section 232, nor submit to the President a report of such investigation, concerning the effect of imports of derivative articles of steel or aluminum on the national security of the United States.

57.    Neither BIS's investigation into the effects of imports of certain steel mill articles on the national security of the United States nor the resulting *Steel Report*, on which Proclamation 9980 purports to rely, involved any of the derivative articles of steel subject to Proclamation 9980, or derivative articles of steel in general.

58.    Pursuant to Section 232, BIS was required to complete its investigation within 270 days of April 19, 2017, a period that expired on January 14, 2018.  Section 232 does not

authorize the Secretary of Commerce to make additional findings or recommendations to the President regarding the April 19, 2017 investigations after that date.

59.     The *Steel Report* was published more than two years earlier than the date Proclamation 9980 was issued.

60.     Pursuant to Section 232, the President had to announce the nature and duration of any remedial actions to be taken based on the *Steel Report* within 90 days of the issuance of the *Steel Report*, a period that expired on April 11, 2018.  Section 232 does not authorize the President to make additional determinations or take any additional remedial actions based on the *Steel Report* after that date.

61.     The President announced his determination based on the *Steel Report* in Proclamation 9705 on March 8, 2018 and implemented remedial action on March 23, 2018.

62.     Pursuant to Section 232, the President had to implement any action based on Proclamation 9705 within 15 days of March 8, 2018, a period that expired on March 23, 2018. Section 232 does not authorize the President to implement remedial actions pursuant to Proclamation 9705 after that date.

### VII.  The Tariffs Imposed are not Rationally Related to the Purported Threat to the National Security of the United States

63.     Proclamation 9980 sets out no findings that the performance of any United States industry producing any of the identified derivative articles of steel, including steel nails, had experienced economic decline.

64.     Proclamation 9980 sets out no findings showing the effect on the national security of the United States based on the economic decline in any domestic industry producing one or more of the identified derivative articles of steel, including steel nails.

65. Proclamation 9980 identifies one reason supporting its conclusion that imports of the derivative articles are a threat to national security:  importation of derivative articles, in lieu of domestic manufacturing of such derivative articles, depresses the demand for domestic articles of steel that could be used in the domestic production of derivative articles.

66. The derivative articles of steel identified in Proclamation 9980, however, represent a negligible portion of total U.S. imports of derivative articles of steel and a negligible portion of the total U.S. market for derivative articles of steel.

67. Proclamation 9980 omitted numerous derivative articles of steel, which articles represents a far larger portion of overall U.S. imports of derivative articles of steel and a far larger portion of the overall U.S. market for derivative articles of steel.

68. For example, imports of stranded steel wire and other articles of HTSUS heading 7312—derivative articles of steel not included in the Proclamation 9980—from countries other than Argentina, Australia, Brazil, Canada, Mexico, and South Korea account for approximately three percent (calculated by value) of imports of all derivative articles of steel from countries other than Argentina, Australia, Brazil, Canada, Mexico, and South Korea.

69. Moreover, in selecting the derivative articles of steel identified in Proclamation 9980, the President did not apply the criteria set forth in Proclamation 9980, which purported to include any derivative articles of steel where (a) steel represents, on average, two-thirds or more of the total cost of materials of the derivative article; (b) import volumes of such derivative article increased year-to-year since June 1, 2018, following the imposition of the tariffs in Proclamation 9705, in comparison to import volumes of such derivative article during the two preceding years; and (c) import volumes of such derivative article following the imposition of

the tariffs exceeded the four percent average increase in the total volume of goods imported into the United States during the same period since June 1, 2018.

70.     For example, stranded steel wire and other articles of HTSUS heading 7312 are articles for which the steel content represents, on average, more than two-thirds of the total cost of materials and for which import value increased by 41 percent over the twenty-four-month period, and 28 percent over the twelve-month period, ending on June 1, 2019. Such derivative articles were not included in the scope of the derivative articles subject to additional 25 percent tariffs under Proclamation 9980.

71.     Proclamation 9980 provides no rationale for exempting derivative articles of steel from Argentina, Australia, Brazil, Canada, Mexico, and South Korea.

72.     Articles of steel from these countries were exempted from the tariffs imposed by Proclamation 9705 based on quotas imposed on such articles or on other agreements between the United States and each exempted country as to trade in such articles.

73.     Proclamation 9980 does not impose quotas on derivative articles of steel from Argentina, Australia, Brazil, Canada, Mexico, or South Korea, nor does Proclamation 9980 indicate any ongoing negotiations with Argentina, Australia, Brazil, Canada, Mexico, or South Korea that could otherwise mitigate any effect that importation of derivative articles from these countries might otherwise have.

74.     The exemptions applicable to derivative articles from Argentina, Australia, Brazil, Canada, Mexico, or South Korea account for approximately 40 percent of imports of those derivative articles into the United States. *See* Chad P. Bown, *Trump's Steel and Aluminum Tariffs are Cascading Out of Control*, Peterson Institute For International Economics (Feb. 4, 2020).  See Exhibit 7.

## STATEMENT OF CLAIMS

## COUNT I – ULTRA VIRES ACTS BY THE
## PRESIDENT AND SECRETARY OF COMERCE

75.    Hilti incorporates by reference paragraphs 1 through 74 of this Complaint.

76.    Congress has the exclusive "power to lay and collect taxes, duties, imports and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, §8.

77.    Pursuant to Section 232, Congress has vested the President with certain authority to regulate commerce with foreign nations in response to imports into the United States in such quantities or under such circumstances as to threaten to impair the national security of the United States.

78.    Section 232 is the President's only statutory authority to regulate commerce with foreign nations in response to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

79.    The President has no independent constitutional authority to regulate commerce with foreign nations in response to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

80.    Section 232 delineates the procedure that the Secretary of Commerce and President must follow before the President may take any action with respect to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

81.    Section 232 also specifies the determinations that the Secretary of Commerce and President must make before the President may take any action with respect to imports into the

United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

82.     With respect to the Secretary of Commerce, Section 232 requires that he "immediately initiate an appropriate investigation," and "immediately provide notice to the Secretary of Defense"; that "in the course of [the] investigation" he shall "consult with the Secretary of Defense" and "appropriate officers of the United States", if "appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice"; and, "no later than . . . 270 days after the date on which [the] investigation is initiated . . . ., submit to the President a report on the findings of such investigation," which "shall be published in the Federal Register" except for any portion that contains classified or proprietary information. 19 U.S.C. §1682(b)(2)-(3).

83.     With respect to the President, Section 232 requires that "within 90 days after receiving a report" issued under Section 232 by the Secretary of Commerce, in which the Secretary of Commerce "finds that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, "the President shall "determine whether [he] concurs" and, if so, "determine the nature and duration of the action that . . . must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. §1682(c)(1)(A). The President must then implement any such action "no later than the date that is 15 days after the day on which the President determines to take action." *Id*. at §1682(c)(1)(B).

84.     In stark contrast to this proscribed process, Proclamation 9980 states that the Secretary of Commerce "*informed*" the President that domestic steel and aluminum capacity utilization had not stabilized at or above the 80 percent level, "*informed*" the President that

imports of certain derivative articles of steel and aluminum had increased, made an "*assessment*" that such imports of these derivative articles "threaten to undermine the actions taken" by the President in Proclamations 9704 and 9705 "to address the risk to the national security of the United States found in the Proclamation 9704 and 9705," and "*assessed*" that reducing imports of certain derivative articles would "address the threatened impairment of the national security of the United States." 85 Fed. Reg. 5281-82.

85.     Prior to the President issuing Proclamation 9980, the Secretary of Commerce had not provided him such "information" or made such "assessments" pursuant to an investigation under Section 232, nor had he done so in a report submitted within 270 days of the initiation of an investigation under Section 232.

86.     No record evidence exists of the Secretary of Commerce notifying or consulting with the Secretary of Defense or any other officer of the United States prior to the President issuing Proclamation 9980, as required under Section 232.

87.     The Secretary of Commerce did not notify the public or provide an opportunity for public comment on the issue prior to the President issuing Proclamation 9980.

88.     No portion of the Secretary of Commerce's "information" or "assessments" was published in the Federal Register or any other place.

89.     The Secretary of Commerce failed to comply with any of the requirements set out under Section 232.

90.     Accordingly, the "information" provided, and the "assessment" made, by the Secretary of Commerce were acts outside his legal authority and as such, did not form an action upon with the President could adjust the imports of an article and its derivatives so that such imports will not threaten to impair the national security under Section 232.

91.     The Secretary of Commerce submitted the *Steel Report* to the President in January 2018, more than two years before the President issued Proclamation 9980.

92.     The *Steel Report* cannot form the basis of an action taken on January 24, 2020 by the President under Section 232 to adjust the imports of an article and its derivatives so that such imports will not threaten to impair the national security because the elapsed time far exceeds the 90 days permitted by Section 232 for announcing the nature and duration of any remedial action.

93.     The President issued Proclamation 9705 on March 8, 2018, nearly two years before the President issued Proclamation 9980 on January 24, 2020.

94.     Proclamation 9705 cannot form the basis of an action taken on January 24, 2020 by the President under Section 232 to adjust the imports of an article and its derivatives so that such imports will not threaten to impair the national security because the elapsed time far exceeds the fifteen days permitted under Section 232 for implementing any remedial steps determined by the President.

95.     Accordingly, the issuance, implementation and enforcement of Proclamation 9980 is contrary to the requirements of Section 232 and violative of the APA.

## COUNT II – UNCONSTITUTIONAL DELEGATION

96.     Hilti incorporates by reference paragraphs 1 through 74 of this Complaint.

97.     Congress has the exclusive "power to lay and collect taxes, duties, imports and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, §8.

98.     Pursuant to Section 232, Congress has vested the President with certain authority to regulate commerce with foreign nations in response to imports into the United States in such quantities or under such circumstances as to threaten to impair the national security of the United States.

99.     Section 232 is the President's only statutory authority to regulate commerce with foreign nations in response to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

100.    The President has no independent constitutional authority to regulate commerce with foreign nations in response to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

101.    Section 232 delineates the procedure that the Secretary of Commerce and President must follow before the President may take any action with respect to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

102.    Section 232 also specifies the determinations that the Secretary of Commerce and President must make before the President may take any action with respect to imports into the United States when those imports are in such quantities or under such circumstances as to threaten to impair the national security of the United States.

103.    With respect to the Secretary of Commerce, Section 232 requires that he "immediately initiate an appropriate investigation," and "immediately provide notice to the Secretary of Defense", that "in the course of [the] investigation" he shall "consult with the Secretary of Defense" and "appropriate officers of the United States"; if "appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice"; and, "no later than . . . 270 days after the date on which [the] investigation is initiated . . ., submit to the President a report on the findings of such

investigation," which "shall be published in the Federal Register" except for any portion that contains classified or proprietary information. 19 U.S.C. §1682(b)(2)-(3).

104.    The Secretary of Commerce did not comply with any of these requirements as to the "information" and "assessments" he provided to the President in connection with Proclamation 9980.

105.    With respect to the President, Section 232 requires that "within 90 days after receiving a report" issued under Section 232 by the Secretary of Commerce, in which the Secretary of Commerce "finds that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security," the President shall "determine whether [he] concurs" and, if so, "determine the nature and duration of the action that . . . must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. §1682(c)(1)(A). The President must then implement any such action "no later than the date that is 15 days after the day on which the President determines to take action." *Id*. at §1682(c)(1)(B).

106.    The President did not comply with any of these requirements when he issued Proclamation 9980.

107.    In addition, the "information" and "assessments" the President received from the Secretary of Commerce in connection with Proclamation 9980 were not the report and findings required under Section 232 before the President could take action to adjust the imports of an article and its derivatives so that such imports will not threaten to impair the national security.

108.    Nevertheless, Proclamation 9980 purports to be an exercise of the President's authority under Section 232.

109.     As applied by the President and Secretary of Commerce with respect to Proclamation 9980, Section 232 is an unconstitutional delegation of Commerce's exclusive power to "lay and collect . . . duties" and "to regulate Commerce with foreign nations," U.S. CONS. art. 1, §8, devoid of an intelligible principle.

110.     Accordingly, Proclamation 9980 is not a constitutional exercise of the President's authority under Section 232 and is therefore void.

## COUNT III – EQUAL PROTECTION

111.     Hilti incorporates by reference paragraphs 1 through 74 of the Compliant.

112.     The equal protection of the laws of the United States is guaranteed by the Fifth Amendment's Due Process requirement, which prohibits the government from unjustifiably treating similarly situated persons differently. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). A classification that "neither burdens a fundamental right nor targets a suspect class" will be upheld "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012).

113.     Hilti is in all relevant respects similarly situated to importers in the United States of derivative products of steel not listed in Proclamation 9980, despite such derivative articles meeting the three criteria set forth by the President for inclusion in Proclamation 9980.

114.     Hilti is in all relevant respects similarly situated to importers in the United States of derivative products of steel listed in Proclamation 9980, but which are exempt from the 25 percent tariff on derivative steel products because such importers source their product in Argentina, Australia, Brazil, Canada, Mexico, or South Korea.

115.    Proclamation 9980 purports to remove the threatened impairment of the national security of the United States by adjusting importation of derivative articles of steel that could displace demand for domestic articles of steel used to manufacture such derivative articles.

116.    The inclusion of steel nails as derivative articles subject to Proclamation 9980, and exclusion of other derivative articles from Proclamation 9980, despite such other derivative articles meeting the three criteria for inclusion set forth in Proclamation 9980, and despite the importation of such other derivative articles into the United States displacing a greater portion of domestic demand for articles of steel, is not rationally related to the stated purpose of Proclamation 9980.

117.    The inclusion of certain derivative articles of steel manufactured in certain countries in Proclamation 9980, and exclusion of identical derivative articles of steel manufactured in Argentina, Australia, Brazil, Canada, Mexico, or South Korea, despite derivative articles manufactured in some of the excluded countries displacing a greater portion of domestic demand for articles of steel and aluminum, is not rationally related to the stated purpose of Proclamation 9980.

118.    Accordingly, because no legitimate governmental purpose exists for the disparate treatment of Hilti, Proclamation 9980 violates equal protection and is unconstitutional.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to hold that this Court:

a.    Enter judgment in favor of Hilti and declare Proclamation 9980 unlawful and void;

b.    Permanently enjoin Defendants from enforcing Proclamation 9980 against Hilti's entries;

c.    Order CBP to refund Hilti any duties collected pursuant to Proclamation 9980 with interest as provided for by law; and,

d.    Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

**BARNES, RICHARDSON & COLBURN, LLP**
Counsel for Plaintiff

By:     s/ Frederic D. Van Arnam, Jr.
Frederic D. Van Arnam, Jr.
100 William Street, Suite 305
New York, NY 10038
(212) 725-0200, ext. 126
rvanarnam@barnesrichardson.com

Dated:  May 5, 2021